UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Guadalupe Gonzales, Jr.,[1]<br><br>   Petitioner,<br><br>vs.<br><br>Charles Ryan, et al.,<br><br>   Respondents. | CV12-0441-TUC-DCB (JR)<br><br>**REPORT AND RECOMMENDATION** |

  Pending before the Court is a Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254 by Guadalupe Gonzales, Jr.  In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report

---

[1] In the captions of the state court filings and the Reply filed in this action (Doc. 11), Petitioner's last name is spelled "Gonzalez."  However, in the caption of the Petition (Doc. 1), his name is spelled "Gonzales."

1

and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

I. **BACKGROUND**

Following a jury trial, Gonzales was convicted of two counts of second degree murder, four counts of endangerment, and four counts related to driving under the influence. *Answer*, Ex. A, p. 1; Ex. I, p. 1. The trial court sentenced Gonzales to consecutive mitigated 10-year sentences on the murder convictions, and concurrent sentences ranging from six months to one-year in prison on the remaining counts. *Id.*, Ex. A., p. 3.

The Arizona Court of Appeals summarized the factual background as follows:

> Around midnight on April 15 or 16, 2008, Gonzalez was in Pima County traveling southbound on Kino Parkway at approximately seventy miles per hour (mph) when he drove through a red light at 22nd Street, colliding with an eastbound Thunderbird and killing its driver, L., and her passenger, A. At the moment of impact, Gonzalez was traveling approximately fifty-nine mph, nineteen mph over Kino Parkway's posted speed limit of forty mph. L. was traveling approximately forty-eight mph, eighteen mph over 22nd Street's thirty-mph speed limit. Before coming to rest, Gonzalez's truck also struck a minivan traveling behind the Thunderbird and a northbound taxicab stopped at the red light on Kino Parkway. Laboratory analysis showed Gonzalez had ingested cocaine before driving and his alcohol concentration one hour after the collision was .201. Laboratory analysis from L.'s autopsy showed therapeutic levels of the prescription painkiller oxycodone in her bloodstream.

*Answer*, Ex. A, p. 2.

Gonzales appealed his conviction, claiming that the trial court erred by precluding evidence of oxycodone in the victim's blood and by failing to instruct the

1  jury on "superseding cause," and regarding consideration of the decedent's conduct
2  in defining and determining recklessness. *Id*., Ex. I. On March 19, 2010, the Court
3  of Appeals affirmed Gonzales's conviction in an unpublished memorandum decision.
4  *Id*., Ex. A. Gonzales then petitioned the Arizona Supreme Court for review and the
5  petition was denied on September 8, 2010. *Id*., Ex. B.

6  On October 7, 2010, Gonzales filed a timely notice for post-conviction relief
7  ("PCR"). *Id*., Ex. C. However, in a ruling dated June 3, 2011, the trial noted that
8  Gonzales had failed to file a memorandum in support of his PCR petition and, after
9  having granted several previous motions to extend, refused to grant an additional
10 extension and dismissed the petition. *Id*., Ex. D. Gonzales appealed the dismissal.
11 *Id.,* Ex. E. On July 18, 2011, the Court of Appeals issued an order finding that
12 Gonzales' petition for review was not in compliance with Rule 32.9, Ariz.R.Crim.P. ,
13 and ordered Gonzales to file a petition conforming to the rule by August 17, 2011.
14 *Id*., Ex. F. On December 2, 2011, Gonzales filed a petition claiming that the
15 dismissal of his petition was reversible error and that his trial counsel had been
16 ineffective by failing to present expert testimony that the oxycodone in the victim-
17 driver's bloodstream affected her driving ability. *Id*., Ex. G. On December 16, 2011,
18 the Court of Appeals dismissed the petition because there had been "no compliance
19 with this Court's order dated July 18, 2011." *Id*., Ex. J. Gonzales claims he appealed
20 the dismissal to the Arizona Supreme Court. *Petition*, p. 5.

21 In the petition now before the Court, which was filed on June 8, 2012,
22 Gonzales alleges that the trial court erred by precluding evidence of oxycodone in the

3

decedent driver's blood and by failing to instruct the jury on the defense theory of the case. *Petition*, pp. 6-7.

## II.     LEGAL DISCUSSION

### A.     The Petition is untimely.

#### 1.     Gonzales did not satisfy the AEDPA statute of limitations.

The Respondents contend that Gonzales's petition is untimely.  The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one year statute of limitations to file a petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  Petitions filed beyond the one-year limitations period must be dismissed. *Id.*

The one-year statute of limitations on habeas corpus petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).  In Arizona, the opportunity for direct review includes post-conviction relief proceedings filed under Rule 32, Ariz.R.Crim.P.  "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)." *Summers v. Schriro*, 481 F.3d 710, 717 (9th Cir. 2007).  The limitations period is tolled during the pendency of a properly filed state post-conviction proceeding.  28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

In this case, the one-year limitations period began to run on June 3, 2011, when the trial court dismissed the PCR notice due to Gonzales failure to timely file a

1 supporting memorandum. *Answer*, p. 3. As of that date, there was no properly filed
2 post-conviction proceeding pending. *Pace*, 544 U.S. at 410, 417 (holding that
3 untimely state post-conviction petition is not "properly filed" within the meaning of §
4 2244(d)(2)). Thus, the one-year limitations period began to run on June 3, 2011, and
5 expired before the petition was filed in the instant matter on June 8, 2012.

### 2. Petitioner is not entitled to equitable tolling.

The United States Supreme Court has determined that "§ 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). However, it is available only when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time" and "the extraordinary circumstances were the cause of his untimeliness." *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003). "Indeed, 'the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule.'" *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

In his Reply, Gonzales admits that his petition was mailed three days late, but claims that this was due to limited access and time to complete legal research. *Reply*, p. 10-11. However, even if these circumstances can be characterized as "extraordinary," equitable tolling is not warranted when the circumstances are encountered early on in the limitations period, *see Allen v. Lewis*, 255 F.3d 798, 800 (9th Cir. 2001), or where the circumstances are not shown to have caused the untimely filing of the habeas petition, *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir.

1  2009). Here, Gonzales merely lists several situations encountered in prison that could
2  delay access to the library, but has not described the time periods.  It is unlikely that
3  these events were constant and that Gonzales was entirely precluded from using the
4  library.  In any case, Gonzales has not satisfied the "heavy burden" he is required to
5  meet to establish a basis for equitable tolling.  *Pace*, 544 U.S. at 418.  Because he is
6  not entitled to equitable tolling, his federal habeas petition was untimely.  28 U.S.C.
7  § 2244(d)(1).

8          **B.**        **Gonzales' claims are not cognizable.**

9          Even if the petition was found to be timely filed, Gonzales' claims do not
10  merit relief.  Gonzales' claims are that the trial court improperly excluded evidence
11  of oxycodone in the decedent driver's blood and failed to give jury instructions that
12  were directed at placing fault on the decedent driver based on the oxycodone use and
13  speed at the time of the wreck.  Respondents contend that these claims fail to raise
14  cognizable federal habeas claims.  The Court agrees.

15          Habeas relief is available only where a prisoner is in custody "in violation of
16  the Constitution."  28 U.S.C. § 2241(c).  Subsection (a) of 28 U.S.C. § 2254 states
17  that habeas relief is appropriate where the petitioner "is in custody in violation of the
18  Constitution or laws or treaties of the United States."  Further, 28 U.S.C. §
19  2254(d)(1) and (2) require that a petitioner demonstrate that the state courts'
20  adjudication of his claims resulted in a decision that was contrary to, or involved an
21  unreasonable application of, clearly established Federal law, as determined by the
22  Supreme Court of the United States; or resulted in a decision that was based on an

1 unreasonable determination of the facts in light of the evidence presented in the State
2 court proceeding.

3      Gonzales' first claim attacks the trial court's evidentiary decision to disallow
4 evidence of the presence of therapeutic levels of oxycodone in decedent-driver's
5 blood. In support of this claim, Gonzales cites only Arizona cases. In addressing this
6 claim, the Court of Appeals logically based the vast majority of its decision on
7 Arizona cases and Rule 403, Ariz.R.Evid. In its only mention of federal authority in
8 relation to this claim, the Arizona Court of Appeals rejected the argument that the
9 trial court's ruling precluding the oxycodone evidence violated Gonzales'
10 constitutional right to present a defense, finding that:

11-14 > "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). Because the court properly excluded the evidence under Rule 403, we find no violation of Gonzalez's constitutional rights.

15 *Answer*, Ex. A, pp. 10-11.

16      To be cognizable here, Gonzales must establish that the trial court's admission
17 of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally
18 unfair. *Estelle v. McGuire*, 502 U.S. 62, 70 (1991); *Walters v. Maass*, 45 F.3d 1355,
19 1357 (9th Cir. 1995). The category of evidentiary infractions that violate fundamental
20 fairness is a very narrow one. *McGuire*, 502 U.S. at 73. As such, few evidentiary
21 errors implicate fundamental fairness. *Id.* at 70. Moreover, the Due Process Clause
22 does not guarantee the right to introduce all evidence, even if it is relevant. *Montana*

1 *v. Egelhoff*, 518 U.S. 37, 42 (1996). Even if evidence is relevant, a state laws
2 justification for its exclusion does not violate a defendant's right to present a defense
3 unless the decision is "arbitrary or disproportionate" and "infringe[s] upon a weighty
4 interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998)
5 (citations omitted).

6 In Gonzales' case, the state court found that the decedent's oxycodone use
7 was irrelevant to a charge of second degree murder because "the jury here could not
8 reasonably conclude Gonzalez had been permitted to proceed legally through the
9 intersection or that [the decedent driver's] negligence had caused the collision."
10 *Answer*, Ex. A, pp. 7-8. Additionally, the state court concluded that the evidence, if
11 admitted, would result in confusion because it would have spawned "a multiplicity of
12 minor issues," and would have been a waste of time. *Answer*, Ex. A, p.10. These
13 reasons are far from arbitrary or disproportionate and cannot be said to have resulted
14 in the violation of Gonzales' due process rights.

15 Turning to Gonzales' next claim, like evidentiary error, a state court's
16 instructional error "does not alone raise a ground cognizable in a federal habeas
17 corpus proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988); *see*
18 *also Estelle*, 502 U.S. at 71-72 ("[T]he fact that the instruction was allegedly
19 incorrect under state law is not a basis for habeas relief. Federal habeas courts
20 therefore do not grant relief, as might a state appellate court, simply because the
21 instruction may have been deficient in comparison to the [model instruction.]").
22 Rather, to be cognizable on habeas review, a state court's instructional error must

1 have "so infected the entire trial that the resulting conviction violates due process."
2 *Id.* To prevail on such a claim, a petitioner must show that the defective instruction,
3 "considered in the context of the instructions as a whole and the entire trial record,"
4 show "a reasonable likelihood" that the jury instructions operated to relieve the State
5 of its burden of proof. *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009); *Estelle*,
6 502 U.S. at 72 (citations omitted). Additionally, a successful petitioner must show
7 that the error was not harmless and had a "substantial and injurious effect or
8 influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619
9 (1993); *Pulido v. Chrones*, 629 F.3d 1007 (9th Cir. 2010).

10     Here, Gonzales asserts that instructions that the decedent driver's oxycodone
11 use, lack of seatbelt use, and speed at the time she was killed were intervening and
12 superseding causes for the wreck and her injuries. In rejecting this claim, the Court
13 of Appeals recited some of the overwhelming evidence that Gonzales did not have
14 the right of way and concluded that no reasonable jury could have found that he had
15 entered the intersection legally. *Answer*, Ex. A, p. 13. This determination was
16 entirely reasonable. The evidence showed that the decedent had the right of way and
17 that Gonzales killed her by running a red light. He was not entitled to the requested
18 instructions under state law or under federal constitutional principles. As such, this
19 claim is not cognizable and must be dismissed.

20
21
22

9

### III.     RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **recommends** that the District Court, after its independent review, **dismiss with prejudice** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation.  If objections are not timely filed, they may be deemed waived.  The parties are advised that any objections filed are to be identified with the following case number:  **12-CV-00441-TUC-DCB**.

Dated this 9th day of July, 2013.

_____
Jacqueline M. Rateau
United States Magistrate Judge